No. 85,751

POLLY WEBBER, f/k/a SCHWARZKOPF, *Claimant/Appellee,* v. AUTOMOTIVE CONTROLS CORPORATION, Self-insured, *Respondent/Appellee,* and ITT HARTFORD INSURANCE, *Insurance Carrier/Appellant.*

(35 P.3d 788)

Opinion filed December 7, 2001.

*Garry W. Lassman,* of Wilbert and Towner, P.A., of Pittsburg, argued the cause and was on the brief for appellant.

*William L. Phalen,* of Pittsburg, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: This is an appeal from the Workers Compensation Board (Board). Polly Webber, formerly Polly Schwarzkopf (claimant), received an eye injury during the course of her employment with Automotive Controls Corporation (ACC) and filed a claim for workers compensation. The administrative law judge (ALJ)

awarded her 1% permanent partial general bodily disability, which she appealed to the Board; the Board increased her award to 15%. Respondent appealed to the Court of Appeals, which reversed the Board. We accepted claimant's petition for review.

The facts are not in dispute, but the medical testimony is subject to different interpretations, which resulted in the Board and the Court of Appeals establishing different disability ratings.

Claimant helped build solenoids on an assembly line for ACC. In March 1997, a co-worker blew dust and chemicals into her eyes with a high pressure air hose. The company physician cleansed the eye with a saline solution and applied a patch. Claimant's eye became worse, and she was sent to several other physicians who treated her. She eventually returned to work, performing the same duties she did prior to the accident.

At the time of the regular hearing before the ALJ in July 1999, it was stipulated that respondent admitted all issues except the nature and extent of claimant's disability. Claimant testified that her right eye was often swollen and matted, especially in the morning, and she constantly had to use artificial tears to keep it moisturized. She said the bottom muscle was puffy and her eyelid had a constant "flutter" and sometimes had a "bigger twitch." In a later deposition she introduced pictures taken before and after the accident that showed significant closure of the right eye. She said she has to turn her head to see through the left eye, and feels ugly and embarrassed about the condition.

Claimant was treated and evaluated by several ophthalmologists, including Dr. Terry Rothstein for an independent medical exam ordered by the ALJ, and Dr. Jeffrey Brick, who examined claimant at the request of her attorney.

None of the doctors could state with reasonable medical certainty that claimant experienced vision loss or deformity of the eye itself as the result of the accident.

Dr. Rothstein stated claimant had blepharospasm (spasm of the eyelids) in the right eye and hypertrophy of the right lower eyelid. A CT Scan showed hypertrophied muscle in the lower right lid. Dr. Rothstein concluded claimant's condition was the result of voluntarily closing the eyelids. While admitting the cause of essential

blepharospasm was generally unknown, he found no objective evidence to connect claimant's condition to the work accident. He provided no functional impairment rating.

Dr. Brick's examination of claimant showed the fissure or opening in her right eye was 4mm and her left eye was 8mm. He diagnosed claimant as having blepharospasm and dry eye based on the objective findings of his observation. When questioned about cause, he began his response hesitantly but stated there was an injury and that it is hard to say what sets off blepharospasm. He concluded: "But it seems as if the accident itself did start a chain of events which led to her having this blepharospasm."

After testifying the incident at work caused the dysfunction in the tissue adjacent to the eye, Dr. Brick used the *American Medical Association Guides to the Evaluation of Permanent Impairment* (4th ed. 1995), which did not address eyelid disfigurement but rather scarring of the skin, to rate claimant's whole bodily functional impairment at 15%. This was the only rating in the record for the blepharospasm and hypertrophy.

Dr. Brick clearly stated in his deposition that all the opinions he had given were within a reasonable degree of medical certainty. He also answered affirmatively that the accident caused the condition based on the fact claimant did not have it the day before the accident and had it immediately afterward.

The ALJ found claimant had no visual impairment related to the accident but did agree and had observed during the hearing that there was hypertrophy of the lower eyelid. The ALJ found the injury was not within the statutes or *AMA Guides* but devised a remedy of 1% permanent partial general bodily disability.

Claimant's appeal to the Board resulted in a finding that the greater weight of evidence established that claimant had blepharospasm and hypertrophy of the right eyelid. The Board concluded from the entire record that it was more probable than not that these conditions were caused by the work accident in March 1997. In that Dr. Brick was the only doctor to rate claimant's disability, the Board adopted his finding and awarded claimant a 15% permanent partial general bodily impairment rating.

The Board ruled the evidence did not establish any reduced vision and held claimant was not entitled to benefits for that condition. In footnote 6, the Board stated: "Unfortunately, neither Dr. Brick nor any other witness specifically addressed the propriety of using the principles set forth in Chapter 9, Section 2, of the fourth edition of the AMA Guides, which deals with facial impairment."

ACC appealed the Board's decision. The Court of Appeals recognized the issue was whether there was a causal relationship between the accident and claimant's current medical conditions and, after reviewing the evidence, held that substantial competent evidence did not support the Board's conclusions: "Webber's own expert could not testify with any degree of certainty that Webber's eye condition was caused by her accident. Both of the experts stated that their objective findings did not support Webber's subjective complaints. This kind of conjecture is not evidence which could be characterized as substantial and competent."

We accepted claimant's petition for review.

Our standard of review is critical in determining the issues we face. Our recent opinion of *Griffin v. Dale Willey Pontiac-Cadillac-GMC Truck, Inc.* 268 Kan. 33, 34-35, 991 P.2d 406 (1999), looked to *Gleason v. Samaritan Home*, 260 Kan. 970, 975-76, 926 P.2d 1349 (1996), and summarized our standard of review as follows:

"The 1993 amendments to the Workers Compensation Act specifically adopt the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*, for workers compensation appeals. K.S.A. 1998 Supp. 44-556. . . . The determination of whether the Board's findings of fact are supported by substantial competent evidence is a question of law. In workers compensation cases, substantial evidence is evidence possessing something of substance and relevant consequence and carrying with it fitness to induce conviction that the award is proper, or furnishing a substantial basis of fact from which the issue tendered can be reasonably resolved. The substantial competent evidence test reviews the evidence in the light most favorable to the prevailing party.

"Additionally, Kansas appellate courts have stated the following: The appellate court does not reweigh the evidence or determine the credibility of witness testimony. *Guerrero v. Dold Foods, Inc.*, 22 Kan. App. 2d 53, 56, 913 P.2d 612 (1995).

"The appellate court will affirm the Board's ruling absent proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias,

passion, or prejudice. *Bradford v. Boeing Military Airplanes,* 22 Kan. App. 2d 868, 870, 924 P.2d 1263, *rev. denied* 261 Kan. 1084 (1996).

"The Board has the power to review both questions of law and fact. The Board's determination is then appealable to the Court of Appeals, which is limited to reviewing questions of law in accordance with the KJRA. *Nance v. Harvey County,* 263 Kan. 542, 551, 952 P.2d 411 (1997).

"Summarizing, the Board reviews questions of law and fact. The appellate court reviews questions of law. Whether a decision is supported by substantial competent evidence is a question of law. The appellate court does not reweigh the evidence or determine the credibility of the witnesses."

We first hold that claimant's argument that causation may not be questioned because the respondent stipulated the only issue was "nature and extent of disability" is incorrect.

While the stipulations did not follow the precise language required by K.A.R. 51-3-8 relating to pretrial stipulations, the question of whether claimant's present conditions were due to the accident was constantly addressed by claimant's own testimony and in the depositions of Dr. Rothstein and Dr. Brick. Dr. Brick's testimony supports claimant's contentions, Dr. Rothstein's did not, but causation was in issue; as the Board stated: "[R]espondent contends that claimant did not prove that either the alleged blepharospasm or loss of visual field are related to the March 1997 accident."

Although we will, as the Board did, resolve the issue of causation in claimant's favor, we agree with the respondent that when only the nature and extent of disability is questioned by a respondent, it has not forfeited the right to claim that the accident which was admitted did not cause the disability which is claimed.

A review of the facts, the testimony of the claimant, the depositions of the doctors, and the observations of the ALJ shows that the injury to claimant was caused by the accident of March 1997 and was supported by substantial competent evidence and not mere conjecture.

Both Dr. Brick and Dr. Rothstein agreed that claimant had blepharospasm in her right eye. A CT scan revealed atrophy in the lower right eyelid. Dr. Brick's examination clearly revealed the condition to exist in January 1999. Dr. Rothstein would not conclude that the condition continued, but that testimony is contrary to the

claimant's and Dr. Brick's. As we said in establishing our standards of review, we do not reweigh evidence or determine credibility of witness testimony, *Griffin*, 268 Kan. at 34, and further, findings supported by substantial evidence will be upheld by an appellate court even though evidence in the record would have supported contrary findings. *Copeland v. Johnson Group, Inc.*, 26 Kan. App. 2d 803, 806, 995 P.2d 369, *rev. denied* 269 Kan. 931 (1999).

Sufficient evidence also supports that the March 1997 accident caused claimant's blepharospasm. Claimant's testimony supports this finding, and we have said that medical evidence is not essential to establish such facts. *Graff v. Trans World Airlines*, 267 Kan. 854, 864, 983 P.2d 258 (1999). Additionally, Dr. Brick stated several times that it was his belief that the accident was the cause of her present condition. The Court of Appeals reads out of context the beginning of an answer by Dr. Brick: "I don't know that I formed a reasonable opinion on that." Dr. Brick went on to give a sufficient opinion and clearly stated his opinion was within a reasonable degree of medical certainty. His testimony was sufficient competent evidence, as was found and held by the Board.

The record reflects, when read as required by our standards of review, that the Board's findings and decision were supported by substantial competent evidence. The Court of Appeals erred in reversing the Board's decision.

The Court of Appeals decision is reversed. The Board is affirmed.