(99 P.3d 145)
No. 91,368

RICHARD D. STUTZMAN, *Claimant/Appellee*, v. CITY OF LENEXA, *Respondent/Appellant*, and ALTERNATIVE RISK SERVICES, *Insurance Carrier/Appellant*.

Opinion filed October 22, 2004.

*Frederick J. Greenbaum* and *Robert J. Wonnell*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for the appellants.

*Michael R. Wallace*, of Shawnee Mission, and *Keith C. Sevedge*, of Lenexa, for the appellee.

Before PIERRON, P.J., MARQUARDT, J., and BUKATY, S.J.

PIERRON, J.: The appellants, City of Lenexa and its insurance carrier, Alternative Risk Services, appeal the order of the Kansas Division of Workers Compensation Appeals Board (Board) affirming the administrative law judge's (ALJ) factual findings related to appellee Richard D. Stutzman's hepatitis C infection (HCV) and concluding he was entitled to permanent partial disability compensation.

This case is a very fact intensive matter involving difficult medicolegal issues. The parties have provided us with extremely well-written briefs and skilled oral arguments. Most of the objective facts are undisputed. The inferences that should be drawn from them are highly contested.

On September 15, 1999, appellee was called in his capacity as a Lenexa police detective to investigate the shooting of Austin Garza. Garza had been shot in the right femoral artery and would eventually die as a result of massive blood loss.

Appellee had the responsibility to preserve all evidence and left the crime scene to follow Garza to the hospital. Appellee was not gowned or masked during the time Garza was being treated in the emergency room or the operating room. Appellee described the scene as a "blood bath." After Garza's death, a gowned and gloved appellee gathered evidence which included clothing, socks, shoes, jewelry, and a wallet. Appellee put the blood-soaked evidence in a biohazard bag and assisted with the body's transport.

After taking Garza's body to the morgue, appellee took the collected evidence to the police department. He hung the "dripping" clothes on hangers. Appellee was gowned and gloved during this procedure. Appellee attended Garza's autopsy the next day. He again utilized routine barrier precautions by gowning and gloving.

On August 14, 2001, appellee was diagnosed with HCV. He was sent home from work. Appellee was treated by several physicians. During this time, Garza's positive HCV status was verified. On August 30, 2001, appellee filed an application for hearing with the

Division of Workers Compensation alleging his exposure to HCV was work related and occurred from events on September 15, 1999.

Numerous voluminous depositions were taken, and a hearing was held on September 24, 2002. The ALJ awarded appellee all the medical expenses incurred as a result of his HCV and 100% permanent partial disability. Appellants filed a request for Board review.

The Board affirmed the ALJ's determination regarding appellee's HCV being a work injury but assigned 15% functional impairment to appellee. Award calculations differed based on time periods in which appellee was contagious, but after his release from HCV treatment the Board assigned 41% permanent partial disability. Appellants timely appeal.

Appellants contends there was substantial competent evidence that appellee had HCV prior to the Garza shooting. The lack of substantial competent evidence supporting appellee's HCV exposure through his employment is alternatively argued. While there was conflicting medical testimony regarding the causative source of appellee's HCV, appellant's argument ultimately fails. An appellate court will uphold findings supported by substantial evidence even though evidence in the record may support contrary findings. *Webber v. Automotive Controls Corp.*, 272 Kan. 700, 705, 35 P.3d 788 (2001). We do not find the appellee's evidence was as totally refuted as contended by the appellants.

In appeals from the Workers Compensation Board, appellate courts do not reweigh evidence or determine the credibility of witness testimony and must uphold the Board's decision when based on substantial competent evidence. " '[S]ubstantial evidence is evidence possessing something of substance and relevant consequence and carrying with it fitness to induce conviction that the award is proper, or furnishing a substantial basis of fact from which the issue tendered can be reasonably resolved.' " *Webber*, 272 Kan. at 703. The substantial competent evidence test reviews the evidence in the light most favorable to the prevailing party. *Griffin v. Dale Willey Pontiac-Cadillac-GMC Truck, Inc.*, 268 Kan. 33, 34, 991 P.2d 406 (1999).

In this case, there was testimony provided by the depositions of numerous qualified experts. Two physicians testified on behalf of appellee, and two physicians testified on behalf of appellants. The testimony differed primarily on appellee's acquisition of HCV and whether it occurred within the scope of his employment.

Appellants relied on Dr. Michael R. Driks and Dr. Allen J. Parmet. Dr. Driks, an infectious disease specialist, emphasized that appellee utilized barrier precautions. He repeated appellee's statement that appellee was unaware of any direct exposure to Garza's blood. Dr. Driks reviewed appellee's surgical, sexual, and occupational histories. Dr. Driks focused upon appellee's acquisition of tattoos, a 1974 diagnosis of a nonspecific hepatitis, and a September 13, 1999, elevation of liver enzymes, specifically, gamma-glutamyl transpeptidase (GGTP). Dr. Driks' conclusion was that appellee's HCV acquisition was not an injury suffered while employed with the Lenexa Police Department but one contracted years earlier.

Dr. Parmet, a board-certified physician in occupational medicine, also reviewed appellee's surgical, sexual, and occupational histories. He noted the elevated GGTP and the progression of symptoms appellee reported during examination. Parmet also noted appellee's "early cirrhosis" of the liver and suggested that this manifestation of HCV indicated appellee had acquired HCV earlier than the September 15, 1999, exposure to Garza's blood. Dr. Parmet stated HCV is incurable and rated appellee, pursuant to the American Medical Association Guidelines for the Evaluation of Physical Impairment (4th ed. 1995), at 15% functional impairment.

Dr. Norton J. Greenberger and Dr. Mark A. Molos testified for the appellee. Dr. Greenberger, a board-certified internist, testified: (1) the September 13, 1999, elevation of GGTP, 93 with the upper limit of 90, was consistent with appellee's alcohol use, (2) appellee's liver biopsy results did not indicate "cirrhosis" but inflammation "along with portal fibrosis," which could have occurred in the time period from the alleged exposure to the August 2001 biopsy, (3) a gloved appellee could have contracted HCV, and (4) notwithstanding appellee's surgical, sexual, and occupational histories, it was more likely than not that Garza was the source for appellee's HCV.

Dr. Greenberger believed it was a close question and found a 51% to 49% likelihood that the HCV was contracted through the exposure to Garza.

Dr. Molos, a board-certified gastroenterologist and appellee's treating physician, testified that the timeline of events, symptoms, and HCV manifestations established appellee's HCV was most likely contracted through his exposure to Garza's blood. Dr. Molos discussed the liver biopsy in detail and concluded appellee's HCV was "fairly early in the process." Molos noted that appellee's levels or "particles" of HCV were undetectable after significant treatment, but he would not be able to resume work without being a risk to others.

The ALJ and the Board agreed appellee's HCV arose out of and in the course of his employment with the Lenexa Police Department.

"The phrase 'out of' employment points to the cause or origin of the accident and requires some causal connection between the accidental injury and the employment. An injury arises 'out of' employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Thus, an injury arises 'out of' employment if it arises out of the nature, conditions, obligations, and incidents of the employment. The phrase 'in the course of' employment relates to the time, place, and circumstances under which the accident occurred and means the injury happened while the worker was at work in the employer's service. [Citations omitted.]" *Kindel v. Ferro Rental, Inc.*, 258 Kan. 272, 278, 899 P.2d 1058 (1995).

Notwithstanding the conflicting testimony, there is substantial competent evidence establishing that the HCV positive blood exposure occurred during appellee's employment as a Lenexa police detective. While the issue of causality was strenuously contested, a review of all the testimony does not lead us to believe the decision of the Board should be reversed.

Appellant next argues substantial competent evidence does not support the Board's conclusion that appellee was entitled to permanent partial general disability pursuant to K.S.A. 1999 Supp. 44-510e. This court's review for substantial competent evidence is stated above.

There is nothing in the record to refute appellant's decision to place appellee on disability retirement benefits as discussed by the vocational rehabilitation specialist. There is nothing in the record refuting appellants' decision to send appellee home immediately after his diagnosis was discussed with his chief of police. There is no evidence of any attempt by appellants at accommodation after appellee's HCV particles were undetected following his lengthy treatment. Appellants, however, argue that appellee is employable.

The rehabilitation specialist testified:

"When taking into account this client's current vocational profile and the medical difficulties that he is currently experiencing, as well as the impact that they have on his level of functioning, it is my opinion that vocationally he is not a candidate to return to work in the competitive labor market.

"His level of functioning is not consistent with competitive employment standards, in terms of a reliable employee day in and day out, in terms of showing up for work and maintaining work over an eight-hour schedule. Another concern for this client vocationally is the diagnosis of Hepatitis C and the contagious issues that go along with this diagnosis, as well as the concerns by employers in the employment community in terms of the medical condition."

The expert testimony also included the fact that when HCV particles are present in lab results, appellee is contagious. Likewise, when there are undetectable levels, he is not contagious. This aspect of HCV obviously hinders appellee from working in his area of expertise but does not presumably preclude him from working at times *if it is known he has undetectable levels*. Appellants argue that appellee is employable for this reason. But appellants' Dr. Parmet testified appellee will never be cured of HCV and discussed the residual problems or side effects of treatment, stating, "[C]ertainly it would happen during the treatment period. They are very sick during that time. Once it's stopped, as Molos testified, they recover back to normal."

K.S.A. 1999 Supp. 44-510e(a) states: "Permanent partial general disability exists when the employee is disabled in a manner which is partial in character and permanent in quality and which is not covered by the schedule in K.S.A. 44-510d and amendments thereto."

Given this statute's language and this court's review, appellants' argument fails. The interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference. *Auten v. Kansas Corporation Comm'n*, 27 Kan. App. 2d 252, 254, 3 P.3d 86, *rev. denied* 269 Kan. 931 (2000). When the agency is one of special competence and experience, its interpretation of a statute may be entitled to controlling significance. If there is a rational basis for the agency's interpretation, it should be upheld on judicial review. *In re Application of Zivanovic*, 261 Kan. 191, 193, 929 P.2d 1377 (1996). But while an appellate court gives deference to the Board's interpretation, if such interpretation is erroneous, the court may grant relief. *Burton v. Rockwell International*, 266 Kan. 1, 5, 967 P.2d 290 (1998)

The Board found appellee failed to meet his burden of proof on the "task loss component," so it concluded he had 0% task loss contrary to the ALJ's award. But it based an award of permanent partial disability on the substantial competent evidence in the record regarding HCV, the facts of this case, and the statutory definition of permanent partial general disability. The Board took into consideration the fact that appellee may be able to work at times but not while he has detectable levels of particles or while being treated because of debilitating side effects. In calculating the award, the Board also considered that appellee had not sought employment and consequently based the permanent partial general disability amount on a minimum wage rate rather than appellee's actual salary.

In its calculation, the Board utilized the functional impairment percentage Dr. Parmet had provided. The Board based the disability compensation on appellee's salary, however, during the time he was contagious. This appears to be a rationally based solution given the characteristics of HCV, the age and training of appellee, and the rehabilitation specialist's assessment. These types of calculations are difficult and require giving consideration to a wide variety of factors that cannot always be measured with absolute precision. We find the result reached was within reasonable limits, although other reasonable persons might arrive at different results.

Affirmed.