(106 P.3d 1152)
No 92,020

DICK L. POFF, *Appellant/Cross-appellee*, v. IBP, INC.,
*Appellee/Cross-appellant.*

Opinion filed March 11, 2005.

*Steven M. Tilton*, of Tilton & Tilton, Chtd., of Topeka, for the appellant/cross-appellee.

*Douglas Greenwald, Gregory D. Worth*, and *Gregory P. Goheen*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for the appellee/cross-appellant.

Before GREEN, P.J., PIERRON and MCANANY, JJ.

PIERRON, J.: Dick L. Poff appeals the order of the Workers Compensation Board (Board) concerning compensation paid as a result of multiple injuries during his employment at IBP, Inc. Poff argues the Board erred in separating each of his claims and should

have considered the cumulative effect of all injuries. He contends the Board erred in finding that he was not permanently and totally disabled and that his claim for work-related hearing loss was untimely. IBP cross-appeals the Board's decision that Poff's varicose vein condition was work related. We affirm.

Poff worked at IBP for 31 years starting in 1970. He began developing carpal tunnel injuries in his hands from trimming cow heads with a knife. While doing this job, he performed work above shoulder level and was on his feet for an 8-hour shift, or longer if he worked overtime. The pain in Poff's fingers, wrists, and shoulders culminated in a carpal tunnel surgery performed by Dr. Bernard Hearon in October and November of 1997. Dr. Hearon released Poff to return to work in February 1998, and he was given an accommodated light duty job of washing, trimming, and cooking intestines which did not require the use of knives. Poff performed light duty jobs for the next 2 to 3 years. Poff testified that he no longer had to use knives, but he had to lift heavy baskets of intestines into the cookers. This job also required him to be on his feet for the entire shift.

Poff first sought medical attention for his varicose veins in April 1999. He testified that the pain in his legs from standing all day and from lifting the baskets of intestines was at an excruciating level. On his own, due to alleged inattention by the IBP nursing staff, Poff sought treatment from Dr. Joseph Bosiljevac, a vascular surgeon. Dr. Bosiljevac diagnosed Poff with varicose veins and recommended he undergo stripping of the worst veins in both legs. Dr. Bosiljevac performed the stripping procedure and took Poff off work from August 10, 1999, until September 13, 1999. Dr. Bosiljevac prescribed Jobst stockings for support, and on October 20, 1999, Poff was given full release with a limitation of standing no more that 4 to 6 hours per day or alternating sitting and standing for an 8-hour day.

IBP had previously attempted to accommodate Poff's varicose vein condition before his visit to Dr. Bosiljevac by assigning him to a light, sit down job of "washing tails." We are informed that the job is precisely what it says. Poff performed this job until he quit IBP in 2000. The job of washing tails was a sitting job that

required Poff to twist to his right, pick up the tail, wash it under high pressure, and then put it in a tub on his left. Poff testified the stool he sat on to wash tails was too tall and his feet would dangle because they could not reach the floor. He said IBP gave him an appropriate stool once in a while but someone would take it because IBP was always short on stools.

Poff testified that he first experienced low back pain when he was lifting the baskets of intestines and the pain did not subside when he began washing tails. Poff had therapy and chiropractic work performed on his back.

Poff quit his job at IBP effective June 29, 2000. He testified the pain in his legs, arms, shoulders, and hands was too much. The day before he quit, Poff requested a hearing examination be performed by the medical staff at IBP. Poff testified he wanted a record of his hearing when he left IBP.

Poff filed four separate workers compensation claims. The Administrative Law Judge (ALJ) awarded compensation to Poff on three of the claims, but denied compensation on Poff's claim for hearing loss damage. In claim No. 233,909, the ALJ found a 6% functional impairment for Poff's bilateral carpal tunnel syndrome and awarded benefits. In claim No. 247,591, the ALJ found Poff's varicose vein condition was compensable and determined that he had a 4% functional impairment. In claim No. 250,093, the ALJ found a 5% functional impairment for Poff's injuries to his lower back. In claim No. 270,756, the ALJ determined that Poff failed to give timely notice of his workplace accident concerning his hearing loss and therefore was not entitled to benefits for hearing loss. The Board affirmed the ALJ's decision and rationale in all four cases, except it modified the functional impairment for Poff's varicose vein condition to 8% permanent partial whole person functional impairment and modified the functional impairment for Poff's carpal tunnel syndrome to 12% permanent partial whole person functional impairment.

Poff appeals, claiming he is totally disabled when considering all his injuries together and that his claim for hearing loss was timely filed. IBP cross-appeals the Board's decision to grant benefits for Poff's varicose vein condition.

Poff first argues the Board erred in affirming the ALJ's entry of four separate awards for his injuries. He contends the ALJ should have considered the cumulative effect of all injuries and vocational factors and rendered one award.

Poff filed applications for hearing in four separate cases (carpal tunnel on May 26, 1998; varicose veins on September 2, 1999; back injury on November 12, 1999; hearing loss on October 11, 2001). A prehearing settlement conference was held on all four docketed claims at the same time. The regular hearing on all four cases occurred at the same time as well. Before taking any testimony at the regular hearing, the ALJ separately stated the stipulations and issues for resolution in each of the four docket cases. The ALJ then informed the parties:

"Okay. Now, as a matter of procedure, we're going to go down docket by docket and we'll need to address each issue and each docket as we go through. When you are through with the evidence in one docket, we'll close that record and then we will proceed to the next docket. These are all apparently separate or alleged separate injuries, so we'll need to address each issue individually as we go through each docket individually as we go through. Is that clear?"

Poff did not object to the procedure laid out by the ALJ, nor did he ask for any clarification concerning the rendering of one award. IBP points out that Poff even filed a submission letter after the regular hearing which addressed each of the four claims separately and which contained no request for consolidating claims and no request to consider permanent total disability based on all claims cumulatively. Poff raised the argument of a single award to the Board. The Board rejected Poff's claim based on his actions before the ALJ and his failure to object: "No objection was made to this procedure nor was there any request to consolidate the claims for entry of a single award. The Board finds that each claim must be determined on its own merits separate from the other filed claims."

Poff claims the ALJ's failure to find a single award of permanent total disability was unreasonable and not an impartial application of the workers compensation laws as required by K.S.A. 2004 Supp. 44-523(a) (ALJ shall act reasonably without partiality). Poff also argues that due to the ALJ's conduct at the preliminary hearing and the ordering of one independent medical exam for all claims,

"it would have been unusual and extraordinary for Claimant to object to the ALJ's *procedure* at the regular hearing."

In the workers compensation system, the ALJ is not bound by the technical rules of procedure, but is required to ensure that all parties are essentially provided due process. K.S.A. 2004 Supp. 44-523(a). IBP states that here the ALJ fully complied with his obligations to both parties in receiving evidence, setting terminal dates, setting out procedures for trial, and in rendering separate awards on separate claims for compensation. We agree. Consolidation of cases in general civil practice is at the discretion of the trial judge. See K.S.A. 60-242(a); *Lone Star Industries, Inc, v. Secretary, Kansas Dept. of Transp.*, 234 Kan. 121, 131, 671 P.2d 511 (1983). "Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. [Citations omitted.]" *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 44, 59 P.3d 1003 (2002). We find no abuse of discretion in the ALJ's decision to issue four separate awards.

Poff next argues substantial evidence proves that his work-related injuries render him incapable of performing even a sedentary sit/stand option job for 8 hours a day. He contends that he is permanently and totally disabled as a result of his varicose vein condition.

Since the 1993 amendments to the Workers Compensation Act, the Board has authority to review the decision by the ALJ on questions of law and fact. The Board's decision is then appealable to the Court of Appeals, where review is limited to questions of law in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.* Whether the Board's findings of fact are supported by substantial competent evidence is a question of law. *Webber v. Automotive Controls Corp.*, 272 Kan. 700, 703-04, 35 P.3d 788 (2001). Substantial evidence in workers compensation cases is evidence that possesses something of substance and relevant consequence and carries with it fitness to induce the conclusion that the award is proper, or furnishes a substantial basis of fact from which the issue raised can be reasonably resolved. The appellate court reviews the evidence in the light most favorable to the prevailing party and does not

reweigh the evidence or assess the credibility of witnesses. *Neal v. Hy-Vee, Inc.*, 277 Kan. 1, 16-17, 81 P.3d 425 (2003).

The issue of whether the Board's findings of fact are supported by substantial competent evidence is a question of law. *Griffin v. Dale Willey Pontiac-Cadillac-GMC Truck Inc.*, 268 Kan. 33, 34, 991 P.2d 406 (1999). The issue of whether Poff is permanently totally disabled must be determined in accordance with the facts of the case. See K.S.A. 44-510c(a)(2). Under K.S.A. 44-510c(a)(2), a "permanent total disability renders the employee completely and permanently incapable of engaging in any type of substantial and gainful employment." *Pruter v. Larned State Hospital*, 271 Kan. 865, Syl. ¶ 1, 26 P.3d 666 (2001). An employee is permanently and totally disabled when rendered " 'essentially and realistically un-employable .' " *Wardlow v. ANR Freight Systems*,19 Kan. App. 2d 110, 113, 872 P.2d 299 (1993).

The medical evidence in this case consisted of the deposition testimony of the treating physician, the independent medical ex-aminer, and two physicians hired by Poff to support his claims of injury. Poff argues that the evidence supports a finding that he should have medical restrictions allowing him to lay down and el-evate his legs on an as-needed basis. He argues this would make him "completely and permanently incapable of engaging in any type of substantial and gainful employment." See K.S.A. 44-510c(a)(2).

The Board weighed all the medical evidence and found Dr. Bos-iljevac's testimony to be the most credible. Dr. Bosiljevac opined that Poff could perform a full day's work with a limitation of no standing more than 4-6 hours per day, and during an 8-hour shift he would need to alternate between standing and sitting. The Board also gave considerable weight to the court-ordered inde-pendent medical examination where Dr. Peter Bieri concluded that even with the varicose vein condition, Poff still retained the ability to perform work of a sedentary nature, and if the varicose vein condition was eliminated from the equation, Poff would be able to perform light to medium work. The Board acknowledged the counter testimony brought forth by Poff's medical experts Drs.

Sharon McKinney and Truett Swaim, but concluded Dr. Bieri and Dr. Bosiljevac to be more persuasive. The Board also stated:

"Moreover, Dr. Bosiljevac stated that moving the lower extremities combined with wearing Jobst stocking was good for claimant's varicose vein condition. It is significant to note that the treating surgeon, Dr. Bosiljevac never imposed work restrictions requiring claimant to lay down and elevate his leg as suggested by Dr. Swaim. And it was those restrictions which Mr. Dreiling primarily focused upon in offering his conclusion."

We find the Board's conclusion that Poff was not permanently disabled is supported by substantial competent evidence. Our duty is to uphold Board findings supported by substantial evidence even though evidence in the record could have supported contrary findings. *Webber v. Automotive Controls Corp.*, 272 Kan. 700, Syl. ¶ 3, 35 P.3d 788 (2001). We find Poff's reliance on *Wardlow v. ANR Freight Systems* to be unpersuasive. The court in *Wardlow* found the medical evidence supported a finding that Wardlow was " 'essentially unemployable as he is unable to do work that requires substantial sitting or standing as well as climbing, squatting, kneeling, lifting, pushing, or pulling.' " 19 Kan. App. 2d at 114.

We acknowledge that if the Board had ruled in Poff's favor, we would have probably sustained that decision considering the evidence here and our scope of review.

Poff also argues the Board erred in finding that he failed to give timely notice and provide a timely claim for his alleged work-related hearing loss.

The timeliness of a claim is primarily an issue of fact, *Riedel v. Gage Plumbing & Heating Co.*, 202 Kan. 538, 541, 449 P.2d 521 (1969), which should not be disturbed on appeal if it is supported by substantial competent evidence. K.S.A. 77-621(a)(7); *Allen v. Goodyear Tire & Rubber Co.*, 184 Kan. 184, 185-86, 334 P.2d 370 (1959). We will apply the previously stated standard of review for substantial competent evidence. See *Neal v. Hy-Vee, Inc.*, 277 Kan. at 16-17. An appellate court will uphold findings supported by substantial evidence even though evidence in the record would have supported contrary findings. *Webber v. Automotive Controls Corp.*, 272 Kan. 700, Syl. ¶ 3, 35 P.3d 788 (2001).

Employees are required to give employers timely notice of injuries. K.S.A. 44-520 states in relevant part that an employee must give notice of any accident to the employer, stating the time and place and particulars thereof, and any name and address of the person injured, within 10 days after the accident. However, actual knowledge of the accident by the employer or employer's duly authorized agent shall render the giving of such notice unnecessary. Equally important, as required by K.S.A. 44-520a, a claimant must make a timely written claim for compensation:

"(a) No proceedings for compensation shall be maintainable under the workmen's compensation act unless a written claim for compensation shall be served upon the employer by delivering such written claim to him or his duly authorized agent, or by delivering such written claim to him by registered or certified mail within two hundred (200) days after the date of the accident, or in cases where compensation payments have been suspended within two hundred (200) days after the date of the last payment of compensation; or within one (1) year after the death of the injured employee if death results from the injury within five (5) years after the date of such accident."

The ALJ determined that Poff

"failed to provide timely notice of a workplace accident. Furthermore, claimant failed to demonstrate just cause for his failure to prove timely notice. This finding of the court is dispositive of the claim as a whole and for that reason, the remaining issues raised by the parties will not be decided."

The Board affirmed the ALJ's decision that Poff had failed to give timely notice of his injury to IBP and had failed to submit a timely written claim on his hearing loss.

At the regular hearing, Poff testified that he had annual hearing exams while he worked at IBP and had requested a hearing examination the day before he terminated his employment. Poff stated he told the nurse he wanted a record of his hearing as it stood when he left IBP. The ALJ and the Board both concluded that Poff failed to provide timely notice of his work-related hearing loss pursuant to K.S.A. 44-520 because he never conveyed the required specific information that he was alleging a workplace injury.

Poff also failed to make a timely written claim pursuant to K.S.A. 44-520a, and the Board's decision in this regard is supported by substantial competent evidence. Poff had the hearing exam on the day before he quit working at IBP, and his last day of employment

was June 29, 2000. Poff did not give a written claim requesting compensation for hearing loss until May 15, 2001. K.S.A. 44-520a required Poff to make a timely written claim within 200 days after the accident date. Whether we use the date of the hearing exam or the last date of employment, Poff's written claim for work-related hearing loss was untimely.

Poff attempts to extend the time limitation for providing a written claim for compensation to 1 year because of IBP's failure to file an accident report with the Director pursuant to K.S.A. 44-557. K.S.A. 44-557(a) requires every employer to report any accident "if the personal injuries which are sustained by such accidents, are sufficient wholly or partially to incapacitate the person injured from labor or service for more than the remainder of the day, shift or turn on which such injuries were sustained."

While an appellate court gives deference to the Board's interpretation of the law, if the Board's interpretation is erroneous, the appellate court may take corrective action. *Neal v. Hy-Vee, Inc.*, 277 Kan. at 11. We find the Board properly interpreted K.S.A. 44-557(a) to require incapacitation before the time for filing is extended to 1 year pursuant to K.S.A. 44-557(c). Poff never missed work because of the alleged hearing loss, and IBP was not required to file an accident report. Consequently, the time limitation was not extended pursuant to K.S.A. 44-557(c).

IBP cross-appeals the Board's decision to award compensation to Poff for his varicose vein condition. IBP argues the Board's finding that Poff's varicose vein condition was work related is not supported by substantial competent evidence. IBP argues that Poff's varicose vein condition is a personal condition which results from the natural aging process and normal activities of day-to-day living.

We will again apply the previously stated standard of review for substantial competent evidence and uphold the Board's decision if the evidence supports the conclusion that the award was proper. See *Neal v. Hy-Vee, Inc.*, 277 Kan. at 16-17.

The ALJ, citing *Demars v. Rickel Manufacturing Corporation*, 223 Kan. 374, 573 P.2d 1036 (1978), found it is well established under the workers compensation law in Kansas that when a worker's job duties aggravate or accelerate an existing condition or

disease or intensify a preexisting condition, the aggravation becomes compensable as a work-related accident. The ALJ held that the medical evidence, as provided by Dr. Bosiljevac, a board-certified vascular surgeon, supported Poff's claim that his captive, standing position for 8 hours a day at IBP aggravated his varicose veins and caused them to grow worse. The ALJ held: "The court finds that while claimant's work duties did not cause claimant's lower extremity symptoms, the captive position in which he was required to stand was part of the nature of his job and such was responsible for aggravating claimant's varicose veins."

The Board affirmed the ALJ's determination and concluded that Poff met his burden of proving that the work he did for IBP aggravated, intensified, or accelerated his preexisting varicose vein condition to a degree greater than the natural aging process and the normal activities of daily living. See K.S.A. 44-508(e). The Board found that all doctors agreed that Poff's work activities for IBP aggravated his varicose veins. The Board stated that the legislature did not intend for the "normal activities of day-to-day living" to be so broadly defined as to include injuries caused or aggravated by the strain of physical exertion of work. While this is a fine distinction, we believe it is a correct interpretation of the law.

The Kansas Supreme Court has held that when a worker with a preexisting condition sustains a subsequent work-related injury that aggravates, accelerates, or intensifies his or her condition, resulting in disability, he or she is entitled to be fully compensated for the resulting disability. *Baxter v. L.T. Walls Constr. Co.*, 241 Kan. 588, 591, 738 P.2d 445 (1987). The test is not whether the injury causes the condition, but whether the injury aggravates or accelerates the condition. *Claphan v. Great Bend Manor*, 5 Kan. App. 2d 47, 49, 611 P.2d 180, *rev. denied* 228 Kan. 806 (1980). Where a preexisting condition is aggravated by an accidental injury arising out of employment, a claimant is entitled to compensation for the entire disability without apportionment. 5 Kan. App. 2d at 51.

Compensable injuries under the Workers Compensation Act are those personal injuries caused by accident arising out of and in the course of employment. K.S.A. 44-501(a). However, a personal in-

jury shall not be deemed to have been directly caused by the employment "where it is shown that the employee suffers disability as a result of the natural aging process or by the normal activities of day-to-day living." K.S.A. 44-508(e).

We agree with the Board that Poff's aggravation of his varicose vein condition does not constitute a disability as a result of the natural aging process or normal day-to-day activities. Compare *Martin v. U.S.D. No. 233*, 5 Kan. App. 2d 298, 615 P.2d 168 (1980), with *Boeckmann v. Goodyear Tire & Rubber Co.*, 210 Kan. 733, 504 P.2d 625 (1972). In *Demars v. Rickel Manufacturing Corporation*, 223 Kan. 374, 379, 573 P.2d 1036 (1978), the court distinguished *Boeckmann* and held that heavy lifting on the job could constitute a series of accidents that would qualify a claimant for workers compensation. In *Demars*, the medical testimony supported the claim that the heavy lifting aggravated a preexisting condition and caused disability. Thus, under *Boeckmann* and *Demars*, the question of whether the aggravation of a preexisting condition is compensable under workers compensation turns on whether that aggravation stemmed from a job-related activity or injury.

Standing and sitting are normal everyday activities. However, it was the lack of movement, from either sitting on the stool with his feet dangling for prolonged periods when he washed tails, or the captive standing for prolonged periods of time on concrete while trimming heads, that were the aggravating factors in this case. These are not normal everyday activities.

We find there is substantial competent evidence in the record to support the Board's finding that Poff's varicose vein condition was a new and distinct injury which arose out of and was directly caused by his employment at IBP.

Affirmed.