NOT DESIGNATED FOR PUBLICATION

No. 126,272

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SAM HAMWI,
*Appellant*,

v.

FIRST STUDENT SERVICES, LLC, and NEW HAMPSHIRE INSURANCE CO.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Submitted without oral argument. Opinion filed August 30, 2024. Affirmed.

*Sam Hamwi*, appellant pro se.

*Christopher J. McCurdy*, of Wallace Saunders, Chartered, of Overland Park, for appellees.

Before HILL, P.J., ATCHESON and CLINE, JJ.

CLINE, J.: Sam Hamwi appeals the dismissal of his workers compensation claims under K.S.A. 44-523(f)(1). This statute requires workers compensation claims to proceed to a regular hearing, settlement hearing, or an agreed award within three years of the date of filing, or they will be dismissed for lack of prosecution unless the claimant can show good cause to extend the deadline. The administrative law judge (ALJ) permitted Hamwi multiple extensions but eventually dismissed Hamwi's claims after finding the three-year deadline had elapsed and Hamwi had failed to show good cause for his delay in prosecution. The Kansas Workers Compensation Board (the Board) affirmed this decision.

After a careful review of the record and arguments on appeal, we see no error and affirm the dismissal of Hamwi's claims.

FACTUAL AND PROCEDURAL BACKGROUND

Hamwi claims he suffered two work injuries while employed as a bus driver for First Student. First, on October 11, 2017, Hamwi was driving a bus when a student threw a rock and hit him in the back of the head. Although this incident purportedly made his vision blur and gave him headaches, he continued to drive until he reported the incident and was taken to the hospital. Later, while driving a bus on December 6, 2017, Hamwi lost consciousness and hit a curb. He filed a claim for the first injury with the Kansas Division of Workers Compensation on November 20, 2017, and he filed a claim for the second injury on December 21, 2017.

Although Hamwi had suffered from neck problems since 2010, he began complaining of constant pain after these work accidents. Hamwi also reported that he suffered from limited range of motion in his neck, numbness and tingling in his feet and left arm, and headaches that caused memory loss.

In April 2018, Dr. James Weimer examined Hamwi for neck pain. After an MRI and an examination of the cervical spine, Dr. Weimer diagnosed Hamwi with severe cervical stenosis extending from C3 through C7. Dr. Weimer recommended physical therapy and a series of epidural injections in the cervical spine. He also suggested that at some point, Hamwi may benefit from surgery. Dr. Weimer ultimately concluded Hamwi could return to work but was skeptical the work-related incidents caused these problems. His opinion on the prevailing factor of the pain was:

> ". . . As far as his recent work-related event relating to his cervical spine, it would be
> difficult for me to say that getting hit in the head with a rock is the prevailing factor for

2

his current multilevel degenerative disc disease and ossification of the posterior longitudinal ligament since that disease was present in 2010. I think this is more likely than not symptoms secondary to a chronic disease process in his neck."

Dr. Weimer had also examined Hamwi in November 2010. Back then, an MRI and CT scan showed multilevel degenerative disc osteophyte with ossification of the posterior longitudinal ligament extending from C3 to C7. At that time, Dr. Weimer felt Hamwi would benefit from a surgical fusion of his spine from C3 to C7. Hamwi apparently never received this surgery.

Hamwi visited several other doctors throughout 2018 and 2019. Dr. George Fluter examined Hamwi in May 2018 upon request of Hamwi's former attorney. He opined that there was some degree of structural change in Hamwi's cervical spine between October 2010 and December 2017. Specifically, the disc protrusions in C3-4, C4-5, and C6-7 appeared to demonstrate more encroachment on the thecal sac.

In August 2018, the ALJ held a preliminary hearing on Hamwi's request for medical treatment and temporary benefits. The ALJ appointed Dr. Terrence Pratt to diagnose, make recommendations, and determine the prevailing factor in Hamwi's condition. Dr. Pratt examined Hamwi in September 2018. At that time, Hamwi chiefly complained to Dr. Pratt about discomfort in the cervical region, numbness in the left upper extremity and feet, daily headaches lasting 10 to 15 minutes, stabbing pain in his neck when swallowing, occasional dizziness, memory loss and fatigue, and numbness in his feet. He suggested to Dr. Pratt that he believed all these symptoms were directly caused by the two work accidents.

Dr. Pratt diagnosed Hamwi with cervicothoracic syndrome with multilevel discogenic changes with spinal stenosis and reported C3-4 and C6-7 disc protrusions. He recommended Hamwi not drive until he had a neuropsychological assessment for his

head trauma symptoms. But like Dr. Weimer, Dr. Pratt concluded Hamwi's work events were not the prevailing factor in his cervical condition and symptoms. Dr. Pratt felt that at most, Hamwi suffered from an aggravation of preexisting multilevel degenerative disc disease. As for the headaches, Dr. Pratt recommended a neuropsychological assessment to determine the prevailing factor because Hamwi alleged they related to his work incidents.

Another preliminary hearing was held in November 2018. After reviewing Dr. Pratt's report which concluded Hamwi's work accidents were not the prevailing factor in Hamwi's cervical complaints, the ALJ denied medical treatment for that condition and related symptoms. But the ALJ ordered a neuropsychological assessment of Hamwi to be completed by Dr. Patrick Caffrey for evaluation of Hamwi's headache complaints.

In December 2019, Dr. Caffrey met with Hamwi for an independent neuropsychological evaluation. After the evaluation, Dr. Caffrey concluded the assessment was invalid because of Hamwi's performance. The evaluation could not quantify Hamwi's neuropsychological status based on Hamwi's suboptimal effort. Dr. Caffrey reported that for a future assessment to be valid, Hamwi would need to "provide his best effort."

Dr. Pratt then provided an addendum to his report after reviewing the reports of Dr. Caffrey and Dr. Fluter. He determined Hamwi's neuropsychological evaluation favored a conclusion of malingering (meaning Hamwi's subjective symptoms were likely false or exaggerated). Dr. Pratt found it impossible to opine that Hamwi's reported cognitive systems had a direct relationship to his reported work accidents. He continued to maintain Hamwi's work accidents were not the prevailing factor for Hamwi's current symptoms. But he did recommend Hamwi as a candidate for treatment for posttraumatic headaches with the use of medications and potential pain management techniques. Dr. Pratt did not recommend work restrictions in relation to Hamwi's work-related incidents.

4

Hamwi continued to press for authorization of medical treatment and disability benefits for his cervical spine complaints. He filed several applications for preliminary hearings which demanded this medical treatment. The ALJ denied his requests but reiterated that Hamwi was authorized to seek treatment for his headache complaints.

In August 2020, First Student and its insurance carrier New Hampshire Insurance Company (collectively respondent) sought to resolve Hamwi's complaints by seeking a Certification for Mandatory Settlement Conference. Hamwi objected, claiming he had not reached maximum medical improvement (MMI) and was still pursuing medical treatment for his complaints at his own expense. At Hamwi's request, the ALJ extended Hamwi's time to proceed to a regular hearing, settlement hearing, or agreed award under K.S.A. 44-523(f) to May 20, 2021. Hamwi's counsel withdrew from representation for both claims on May 27, 2021.

After the deadline expired to submit the claim to regular hearing, settlement, or agreed award, Hamwi, in June 2021, filed another motion to extend the deadline to proceed to a regular hearing. In response, the respondent moved to dismiss the claims under K.S.A. 44-523(f)(1). After a hearing, the ALJ allowed Hamwi additional time to respond to the motion and submit additional documentation to support his position. After this deadline passed, the ALJ issued an order denying the motion to dismiss and extending Hamwi's deadline under K.S.A. 44-523(f)(1) to March 24, 2022. In its order, the ALJ noted Hamwi had previously been granted treatment for posttraumatic headaches but denied treatment in relation to his neck or cervical spine as the work accidents were not the prevailing factor in those conditions or need for treatment.

Respondent filed another motion to dismiss on March 29, 2022. After a hearing, the ALJ again allowed the parties more time to submit additional documentation before issuing a ruling. But no ruling was issued because the parties notified the ALJ that they had reached a tentative settlement and scheduled a settlement hearing. Ultimately, a

settlement was not reached and respondent filed a third motion to dismiss on August 22, 2022. Hamwi filed an application for a hearing seeking medical treatment. After a hearing, the ALJ denied Hamwi's request for medical treatment and granted respondent's motion to dismiss on December 6, 2022. The ALJ noted that Hamwi had not presented new evidence that the prevailing factor for the medical treatment he sought for his cervical spine was either of the two work accidents. Hamwi offered no other arguments or evidence of good cause to keep extending the deadline, and the ALJ noted Hamwi had not received authorized medical treatment since February 27, 2020. In his order, the ALJ stated:

> "The evidence submitted does not show that the Claimant is still receiving treatment for injuries sustained in these work injuries. The Claimant has a degenerative condition in his neck. Although the Claimant maintains that the condition is the result of the work injuries, the medical experts disagree. The Claimant had a preexisting condition in his neck. The work injuries are not the prevailing factor, or primary factor for his neck condition and present need for treatment. The Claimant should seek medical treatment using his private health insurance."

The ALJ dismissed with prejudice Hamwi's claims for failure to prosecute under K.S.A. 44-521(f)(1). The Board affirmed the ALJ's decision. In reviewing the record, the Board found the "evidence does not establish [Hamwi's] assertion he has not reached maximum medical improvement for work-related injuries" nor does it "establish any other good cause to extend the time to proceed to regular hearing, settlement hearing or agreed award."

REVIEW OF HAMWI'S APPELLATE CHALLENGE

Hamwi challenges the dismissal of his claims because he says he has not yet reached MMI for his work-related injuries, therefore providing good cause to extend the three-year deadline. The crux of this claim is his disagreement with the Board's finding

that the work accidents were not the prevailing or primary factor for his neck condition. See K.S.A. 44-508(d) (noting a work "accident must be the prevailing factor in causing the injury"); see also K.S.A. 44-508(g) ("'Prevailing' as it relates to the term 'factor' means the primary factor, in relation to any other factor."). While he claims he has also not reached MMI for his head injury, he does not dispute the basis for the Board's finding on this issue—which is that Hamwi declined medical treatment for this injury and therefore had reached MMI.

A. *Standards of review*

We review the Board's decision affirming the ALJ's dismissal of Hamwi's claims under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. *Woessner v. Labor Max Staffing*, 312 Kan. 36, 42, 471 P.3d 1 (2020). Under the KJRA, the party challenging the Board's action bears the burden of showing its order was invalid. K.S.A. 77-621(a)(1). Kansas appellate courts review the record to determine whether the decision of the Board is supported by evidence that is substantial when viewed "in light of the record as a whole." K.S.A. 77-621(c)(7). We must do so without reweighing the evidence presented to the Board. K.S.A. 77-621(d).

The term, "in light of the record as a whole" is defined under the KJRA to mean:

"[T]hat the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record . . . cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review." K.S.A. 77-621(d).

Substantial evidence in a workers compensation case is evidence that possesses something of substance and relevant consequence that induces the conclusion that the award is proper; it furnishes a basis of fact from which the issue raised can reasonably be resolved. Stated another way, substantial evidence is "'such evidence as a reasonable person might accept as being sufficient to support a conclusion.'" *Olds-Carter v. Lakeshore Farms, Inc.*, 45 Kan. App. 2d 390, 394-95, 250 P.3d 825 (2011).

In considering whether the Board's factual findings are supported by substantial competent evidence, we owe no deference to the Board's legal analysis or determination. *Estate of Graber v. Dillon Companies*, 309 Kan. 509, Syl. ¶¶ 2, 3, 439 P.3d 291 (2019).

B. *Prosecution deadline in K.S.A. 44-523(f)(1)*

The Board affirmed the ALJ's dismissal of Hamwi's claims with prejudice, under K.S.A. 44-523(f)(1). This subsection allows an employer to seek dismissal of any workers compensation claim "that has not proceeded to a regular hearing, a settlement hearing, or an agreed award under the workers compensation act within three years from the date of filing an application for hearing" for lack of prosecution. K.S.A. 44-523(f)(1). If the employer seeks such a dismissal, the ALJ must set the matter for hearing and notify the claimant. The ALJ may extend this deadline "for good cause shown, which shall be conclusively presumed in the event that the claimant has not reached maximum medical improvement." K.S.A. 44-523(f)(1). But if the claimant cannot establish good cause to justify the extension, "the claim shall be dismissed with prejudice." K.S.A. 44-523(f)(1).

On appeal, Hamwi does not challenge the Board's determination that the prosecution of his claims extended beyond this three-year deadline. Instead, he contends his deadline should have been extended because he disagrees with the Board's finding that he failed to show good cause to justify an extension.

C. *Hamwi's arguments are largely factual disputes which we cannot address on appeal.*

Hamwi spends most of his briefing disputing the Board's conclusion that his work incidents were not the prevailing factor causing his cervical condition and symptoms. He begins by discussing the doctors' reports and describing why he disagrees with their diagnoses and conclusions. But he provides no record citations to verify his assertions. Instead, he mentions various medical records and purports to quote portions of them in support of his assertions while at the same time acknowledging these records are not included in the record on appeal.

For example, in contesting Dr. Weimer's medical opinions, Hamwi states Dr. Weimer incorrectly claimed he saw Hamwi "before for my neck and that is false. I have never been treated or seen by him for my neck." Hamwi admits he saw Dr. Weimer in 2010 but disputes the reason for that visit without providing any citation to the record to support his claim. He also relies on alleged conclusions from "Dr. Xavier NG of Core Pain Management" and Dr. Fluter, whom Hamwi claims stated his symptoms were connected to his work injuries in 2017. Yet Hamwi admits neither report was included in the record on appeal.

Even if we were allowed on appeal to reweigh the medical opinions provided by the physicians who examined Hamwi, we are handicapped, if not prevented, from doing so without access to the records on which Hamwi relies. Hamwi was required by Supreme Court Rule 6.02 to provide a specific citation to the record for all factual assertions. See 2024 Kan. S. Ct. R. at 36; *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 623, 244 P.3d 642 (2010). This rule similarly gives us the discretion to presume that a factual statement made without a reference to volume and page number has no support in the record on appeal. Supreme Court Rule 6.02(a)(4). And our general

practice is to presume statements made without a reference to the record's appeal volume and page number lack support. *Svaty*, 291 Kan. at 623.

As for Dr. Caffrey's neuropsychological evaluation, Hamwi admits Dr. Caffrey found it invalid because of Hamwi's "lack of performance." And Hamwi does not disagree with this conclusion. Instead, he argues this invalid evaluation cannot be used to "rule in or rule out that I am disabled because of the event of the accident in 2017." While this may be true, it does nothing for his cause.

Hamwi also challenges the doctors' conclusions that his condition preexisted the 2017 incidents by reciting several physical activities he claims he could perform before the incidents which he can no longer perform. And he claims the doctors' reports are inaccurate, false, or missing information. But we cannot "reweigh evidence or determine credibility of witness testimony" when reviewing appeals from the Kansas Workers Compensation Board. *Webber v. Automotive Controls Corp.*, 272 Kan. 700, Syl. ¶ 3, 35 P.3d 788 (2001).

Our job is to review the record to determine whether the decision of the Board is supported by evidence that is substantial when viewed "in light of the record as a whole." K.S.A. 77-621(c)(7). In doing so, we find that it is. Both Dr. Pratt—the ALJ-ordered independent medical examiner—and Dr. Weimer—Hamwi's own doctor who evaluated him in 2010 and 2018—concluded the work accidents were not the prevailing factor for Hamwi's current cervical symptoms and condition. And although the ALJ authorized medical treatment for Hamwi's headaches, Hamwi declined the recommended treatment. He therefore reached MMI for his work-related injury.

Hamwi has not persuaded us that the Board wrongly concluded he failed to show good cause for extending the three-year deadline. There is substantial evidence to support its findings that Hamwi reached MMI for his work-related injury and that his current

cervical spine symptoms and complaints were not work related. We therefore affirm the decision to dismiss his claims with prejudice under K.S.A. 44-523(f)(1).

D. *Hamwi fails to support his other challenges on appeal.*

Along with reversing the dismissal of his claims, Hamwi asks us to issue an order compelling respondent to "produce my employment and medical records, which the Judge has signed and ordered since January 10th, 2018 (missing from the record)." He claims the "lower court failed to enforce" this order. But Hamwi failed to provide a copy of the order, provide a record citation to support his assertion that the ALJ failed to enforce it, specify which employment and medical records he has allegedly not received, or articulate how respondent's alleged failure to provide these records impacted his ability to prosecute his claims within the statutory three-year period. As the party challenging the court's order, Hamwi was responsible for providing a copy of the order, along with a record citation for his contention that the ALJ failed to enforce it. *State v. Carr*, 314 Kan. 744, Syl. ¶ 19, 502 P.3d 511 (2022). Hamwi has failed to provide enough information to allow our review of this issue on appeal.

Last, Hamwi complains that he was denied access to the OSCAR system which limited his ability to self-represent and verify that information he provided was added to the system. But he again provides no record citation for his claims. He also provides contradictory briefing about whether he managed to file documents in the OSCAR system, at one point claiming he submitted emails to the ALJ for filing and at another admitting those emails were filed in OSCAR. Further, the ALJ specified several emails which Hamwi submitted to the ALJ for filing which the ALJ filed in the OSCAR system. Hamwi fails to specify which of these emails he is now claiming were not filed, if any. Without this information, we cannot address Hamwi's claims regarding the OSCAR system either. See *Svaty*, 291 Kan. at 623. And while he separately argues certain medical records were not included in the record on appeal, Hamwi bears the ultimate

11

responsibility to ensure those records are included. *Carr*, 314 Kan. 744, Syl. ¶ 19. Supreme Court Rule 3.02(c) (2024 Kan. S. Ct. R. at 20) specifies the documents included in the record on appeal and provides the procedure for Hamwi to seek to add any documents to the record. Hamwi has not sought to avail himself of this procedure.

E. *Hamwi's self-represented status*

Hamwi points out his self-represented status in his briefing. While we appreciate the difficulty of his position, we must remain within the bounds of the rules governing judicial conduct in all cases before us, including those involving self-represented litigants. Those rules require that we uphold and apply the law fairly and impartially. Kansas Code of Judicial Conduct, Supreme Court Rule 601B, Canon 2, Rule 2.2 (2024 Kan. S. Ct. R. at 487). As Comment [4] to that rule explains:

> "It is not a violation of this Rule for a judge to make reasonable accommodations to ensure self-represented litigants the opportunity to have their matters fairly heard. On the other hand, judges should resist unreasonable demands of assistance that might give an unrepresented party an advantage. If an accommodation is afforded a self-represented litigant, the accommodation shall not relieve the self-represented litigant from following the same rules of procedure and evidence that are applicable to a litigant represented by an attorney." Rule 2.2, Comment [4] (2024 Kan. S. Ct. R. at 487).

These guidelines are reiterated in the comments explaining Rule 2.6's requirement that "[a] judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, a right to be heard according to *law*." Kansas Code of Judicial Conduct, Supreme Court Rule 601B, Canon 2, Rule 2.6(A) (2024 Kan. S. Ct. R. at 489). It provides:

> "Increasingly, judges have before them self-represented litigants whose lack of knowledge about the law and about judicial procedures and requirements may inhibit their ability to be heard effectively. A judge's obligation under Rule 2.2 to remain fair and

12

impartial does not preclude the judge from making reasonable accommodations to ensure a self-represented litigant's right to be heard, so long as those accommodations do not give the self-represented litigant an advantage. If the judge chooses to make a reasonable accommodation, such accommodation shall not relieve the self-represented litigant from following the same rules of procedure and evidence that are applicable to a litigant represented by an attorney." Rule 2.6(A), Comment [2] (2024 Kan. S. Ct. R. at 489).

These rules and explanatory comments rely on the fundamental principle which underlies our legal system—the equal treatment of all litigants. This means that we cannot give self-represented litigants any advantage or disadvantage based on their choice to proceed without legal representation. See *Mangiaracina v. Gutierrez*, 11 Kan. App. 2d 594, 595-96, 730 P.2d 1109 (1986). We cannot make arguments for either side nor can we presume the veracity of any party's unsupported statements. And, as we explained, even if we accepted Hamwi's contentions at face value, the law prevents us from reweighing evidence or making credibility determinations on appeal.

Affirmed.